IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BILLY HERRING                                                    PLAINTIFF

VS.                         NO. 3:06CV00160-BD

MICHAEL J. ASTRUE,
Commissioner of SSA[1]                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Billy Herring, brings this action under § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g) (1976), seeking review of a final decision of the

Commissioner of Social Security denying the Plaintiff's claim for disability benefits

under 216 (i) and 223 of Title II of the Act, 42 U.S.C. §§ 416 (i) and 423.  For reasons

that follow, the decision of the Commissioner is affirmed.

I.      Procedural History

Plaintiff protectively filed his application for disability insurance benefits on July

15, 2004 (Tr. 24), alleging a disability onset date of June, 2004.  (Tr. 235)  The

Commissioner denied Plaintiff's application initially and on reconsideration.  (Tr. 15,

38-41, 44-46)  On May 4, 2006, Plaintiff, represented by counsel, appeared and testified

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on
February 12, 2007.  He is substituted, therefore, for Jo Anne B. Barnhart under
Fed.R.Civ.P. 25(d)(1).

at a hearing (the "Hearing") before an Administrative Law Judge ("ALJ").[2]  (Tr. 15,

230-249)  Elizabeth Clem, a vocational expert, also appeared and testified.  (Tr. 13,

245-249)  The ALJ issued a decision denying benefits on May 26, 2006.  (Tr. 12-24)

When the Appeals Council denied Plaintiff's request for review (Tr. 4-6), the ALJ's

decision became the final decision of the Commissioner.  This appeal followed.

## II.    Background

The Plaintiff was 44 years old at the time of his Hearing.  (Tr. 234)  He has a high

school education (Tr. 234) and has worked in the past as a certified jailer, a truck driver,

manager or yard foreman, and a welder.  (Tr. 77, 234, 236)  Mr. Herring suffered a heart

attack on June 8, 2004 (Tr. 119), and has not worked since that time.  (T. 234)  He alleges

the following disabling exertional impairments:  coronary artery disease (including high

blood pressure and high cholesterol), and mild chronic obstructive pulmonary disease,

which cause shortness of breath and fatigue.  In addition, the Plaintiff claims to suffer

disabling anxiety and depression.  (Tr. 23, 76)

## III.   Findings of the ALJ

The ALJ appropriately followed the familiar five-step sequential analysis set out

in the social security regulations, C.F.R. §§ 404.1520(a)-(f) (2005),  finding: (1) that Mr.

Herring had not engaged in substantial gainful activity since June 8, 2004 (Tr. 22); (2)

that he suffered from a severe impairment, though he did not specify which of Plaintiff's

---

[2]The Honorable David J. Manley, Administrative Law Judge.

alleged impairments were "severe" (Tr. 23); (3) that Mr. Herring did not have an impairment, or combination of impairments, rising to the level of any impairment listed in Appendix 1 to Subpart P, Regulation No. 4 (Tr. 23); (4) that his impairment prevented him from performing his past relevant work (Tr. 23); but (5) that he retained the residual functional capacity to perform a wide range of sedentary work (Tr. 23).  The finding that Mr. Herring had the residual functioning capacity to perform a range of sedentary work was based on a finding that his subjective complaints were not fully credible and on the testimony of a vocational expert.

The Plaintiff contends that the ALJ's findings are not supported by substantial evidence because: (1) the ALJ erred in finding Plaintiff's mental impairments were not severe; (2) the ALJ improperly discounted the Plaintiff's subjective complaints of weakness and fatigue; (3) the ALJ erred in concluding that the Plaintiff had the residual functioning capacity to perform sedentary work by failing to obtain a physical assessment from an examining or treating source; and (4) the hypothetical the ALJ posed to the vocational expert failed to include all of the Plaintiff's impairments.

The Commissioner contends: (1) that the ALJ properly concluded that the Plaintiff's mental impairments were not severe, based on the medical evidence and the Plaintiff's daily activities and testimony; (2) that the ALJ properly discounted the Plaintiff's subjective complaints of weakness and fatigue; and (3) that substantial

evidence supported the ALJ's determination that the Plaintiff retains the capacity to perform a wide range of sedentary work.

## IV.    Legal Analysis

A.    *Standard of Review*

In reviewing the decision of the ALJ, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it."  *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision."  *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome."  *Id.*  "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]."  *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotation marks omitted). Thus, the Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).

4

B.    *Findings Regarding Plaintiff's Mental Impairments*

A "severe" impairment is one that "significantly limit[s] [a claimant's] physical or mental ability to do basic work activities,"  20 C.F.R. § 404.1521(a) (1996), which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (1996); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

There is substantial evidence in the record to support the ALJ's determination that the Plaintiff's depression and anxiety were not severe.  George M. DeRoeck, Psy.D. evaluated the Plaintiff in January of 2005.  (Tr. 173)  Although Dr. DeRoeck found Plaintiff's Global Assessment of Functioning to be 45 on a scale of 1 to 100, he noted that the Plaintiff, "evinced, however, a wide range emotionality appropriate to the social content of the situation."  (Tr 173)  Dr. DeRoeck's findings also indicated "[n]o mental confusion or disorientation," "[n]o deficits in judgment,"and "no evidence of misarticulation or dysfluency"  (Tr. 178)  "Mr. Herring was able to remain on task. . . . [h]e was focused . . . and no evidence of lack of sustained concentration or attentiveness was noted." (Tr. 178)  "His pace was well within normal limits."  (Tr. 178)

Plaintiff's own statements and testimony at the Hearing also support the ALJ's findings that his mental problems were not severe, as that term is defined in the Social Security Act.  He testified at the Hearing that he is able to relate to and get along with other people and authority figures.  (Tr. 91, 244)  He has never lost a job due to problems getting along with others, and is able to go outside unaccompanied.  (Tr. 88, 91)  He also

testified that he is an emotionally stable person.  (Tr. 244)  When asked why he could not

perform a job where he could sit down most of the day, *i.e.* sedentary work, the Plaintiff

answered, "I don't know, Your Honor.  Depends on what it was, I guess.  I don't know,

Your Honor."  (Tr. 239)  When Dr. DeRoeck asked the Plaintiff about performing

sedentary work during his psychological examination, Mr. Herring replied that if he

didn't have to lift and did not get too tired, "I guess I could handle it."  (Tr. 174)

In addition, the record reflects that the Plaintiff was not taking any medications for

his anxiety or depression when he applied for disability benefits or at the time of the

Hearing.  (Tr. 79, 95, 97, 105-106, 110, 112, 117, 173, 175)  The Eighth Circuit has held

that the absence of a need for medication is a factor that an ALJ may consider when

evaluating a claim for disability.  *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th

Cir. 2003).  The finding that the Plaintiff's mental impairments are not severe, for

purposes of the Social Security Act, is amply supported by evidence in the record as a

whole.

C.     *Findings Regarding Subjective Complaints*

As an initial matter, the Court is mindful that credibility determinations are

primarily a matter for the ALJ to decide.  *Edwards v. Barnhart,* 314 F.3d 964 (8th Cir.

2003).  "In evaluating subjective complaints, the ALJ must consider, in addition to

objective medical evidence, any evidence relating to: a claimant's daily activities;

duration, frequency and intensity of pain; dosage and effectiveness of medication;

6

precipitating and aggravating factors; and functional restrictions." *Pearsall v. Massanari,*
274 F.3d 1211, 1218 (8th Cir. 2001) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th
Cir.1984)).  "A claimant's subjective complaints may be discounted if there are
inconsistencies in the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th
Cir. 2005) (citing *Polaski, supra*).  In this case, the ALJ discounted the Plaintiff's
subjective complaints of fatigue and shortness of breath under the framework set out in
*Polaski*.  (Tr. 18-20)

 In his opinion, the ALJ discussed Plaintiff's failure to stop smoking, in spite of
complaints of shortness of breath and repeated admonitions from treating physicians and
other medical providers.  (Tr. 16)  Mr. Herring had been advised repeatedly by health care
providers to stop smoking in order to improve his respiratory problems. (Tr. 146, 157
209-210, 216-217, 225-226, 236)  He had not quit at the time of the Hearing. (Tr. 236,
242).  See, *e.g.*, *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (noting that failure to
follow a prescribed course of remedial treatment for respiratory problems, including the
cessation of smoking, without good reason, is grounds for denying an application for
Social Security benefits); see also *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997)
(same).

 The ALJ considered the Plaintiff's testimony at the Hearing as well his statements
to Dr. DeRoeck regarding his daily activities, including: doing dishes, cooking, washing
clothes, cutting the grass with a riding lawnmower, shopping with his wife, running

errands, fishing, attending church, and driving a car.  (Tr. 19-20, 179)  In evaluating

credibility, an ALJ may consider a claimant's ability to perform daily activities.  *Gray v.*

*Apfel*, 192 F.3d 799, 804 (8th Cir. 2003).

Furthermore, the record shows that there were significant periods of time when

Plaintiff did not seek treatment for his impairments, despite having medical insurance.

(Tr. 118-228)  The fact that Plaintiff did not require frequent and substantive medical

treatment is further evidence that his symptoms were not as disabling as he contends. (Tr.

19)  See *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).  The ALJ properly

considered the record as a whole and relied upon substantial evidence to support the

conclusion that the Plaintiff's subjective complaints were not entirely credible.

D.    *Findings Regarding Residual Functioning Capacity*

The ALJ found that Mr. Herring retained the ability to perform a wide range of

sedentary work.  (Tr. 23)  In making this determination, the ALJ relied, in part, on the

testimony of a vocational expert.  Viewing the record as a whole, there is substantial

evidence to support the conclusion that there are jobs that Mr. Herring could perform that

are available in sufficient numbers.

Of course, there must be at least some medical evidence in the record to support a

finding that there are jobs that the Plaintiff can perform.  Although Plaintiff claims that he

suffers from weakness and fatigue that prevents him from performing the exertional

demands of sedentary work, medical evidence in the record demonstrates that he is not so

8

limited.  Plaintiff's medical records since his heart attack June 2004 are generally

unchanged.  His chest x-rays, echocardiograms, and other medical tests throughout 2004

and 2005 were within normal range.  (Tr. 135-137, 143, 146, 169, 219-222, 225)

Plaintiff's physicians noted that his heart had regular rate and rhythm with no abnormal

sounds, and that his lungs were clear.  (Tr. 141, 156, 169, 210, 214-215, 216, 227).  In

June 2004, Plaintiff's physician instructed him to begin walking five minutes per day and

advance as tolerated to one mile a day.  (Tr. 118)  Dr. DeRoeck noted that during the

January 2005 consultative examination that Plaintiff did not appear to have any shortness

of breath or to be overtly fatigued or in any physical distress.  (Tr. 179)

In July, 2004, and even as late as October 2005, Plaintiff's treating physicians

cleared him to return to work, without restrictions.  (Tr. 156, 215)  Plaintiff contention

that the ALJ should have recontacted his physicians to further develop the record

pertaining to his alleged limitations is not well taken.

> The need for medical evidence, however, does not require the Secretary to
> produce additional evidence not already within the record.  "[A]n ALJ is
> permitted to issue a decision without obtaining additional medical evidence
> so long as other evidence in the record provides a sufficient basis for the
> ALJ's decision."

*Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) (quoting *Naber v. Shalala*, 22

F.3d 186, 189 (8th Cir.1994)).  An ALJ must recontact a treating physician only when the

information a physician provides is inadequate to determine whether claimant is disabled.

20 C.F.R. § 416.912(e).  Plaintiff's treating physicians in this case expressly stated that the Plaintiff could return to work.  (Tr. 156, 215)

In addition to medical evidence, the ALJ was entitled to rely on other evidence to determine residual functioning capacity.  *Lauer*, 245 F.3d at 704.  As noted above, Plaintiff's shortness of breath and fatigue have not prevented him from doing a significant number of daily activities.  (Tr. 85-89, 98, 114, 179, 238, 242-243)

There was substantial evidence in the record as a whole, including medical evidence, to support the ALJ's determination regarding Mr. Herring's residual functioning capacity.  See, *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (conflicting medical evidence as well as claimant's activities and testimony supported the ALJ's residual functioning capacity assessment).

E.   *Adequacy of the Hypothetical Posed to the Vocational Expert*

A vocational expert's response to a properly posed hypothetical question constitutes substantial evidence to support an ALJ's finding at step five of the analysis. "Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence." *Howard*, 255 F.3d at 582.  The Plaintiff contends, however, that the hypothetical question posed to the vocational expert was fatally deficient because it did not include all of the Plaintiff's claimed impairments.  This argument is without merit. The Eighth Circuit has held that an ALJ is required to present to a vocational expert only those limitations that have been established by the evidence.  "A hypothetical question is

properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams,* 393 F.3d at 804 (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir.2001)); *Stormo v. Barnhart*, 377 F.3d 801, 809 (8th Cir. 2004) (same).

In this case, the ALJ found that Plaintiff had the residual functioning capacity to perform a wide range of sedentary work based on his ability to lift or carry up to 10 pounds occasionally, to sit for up to 6 hours in an 8-hour workday, and to stand or walk for up to 2 hours in an 8-hour workday. (Tr. 20) The vocational expert testified that an individual with Plaintiff's residual functioning capacity could perform other jobs in the national economy, including work as a dispatcher, a cashier, and a factory assembly worker. (Tr. 22, 248) After considering Plaintiff's residual functioning capacity, his past work experience, the vocational expert's testimony, and the rest of the evidence in the record, the ALJ properly determined that Plaintiff was able to perform other jobs existing in significant numbers in the national economy and was, therefore, not "disabled" under the Social Security Act. (Tr. 22)

## V.     Conclusion

Substantial evidence supports the ALJ's decision in this case. Accordingly, the decision of the Commissioner is affirmed and this case is DISMISSED WITH

PREJUDICE.  The Clerk is directed to close this case.

DATED this 31st day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE